488 S.E.2d 471

**Christina Nicole JOHNSON, an infant, who sues by her Mother and next Friend, Tammy Johnson Harper, Plaintiff Below, Appellant**

v.

**HILLS DEPARTMENT STORES, INC., a Delaware Corporation, Defendant Below, Appellee.**

No. 23418.

Supreme Court of Appeals of West Virginia.

Submitted March 25, 1997.

Decided June 2, 1997.

David S. Skeen, South Charleston, for Appellant.

Anita R. Casey and Christopher J. Pyles, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for Appellee.

PER CURIAM:

Appellant Christina Nicole Johnson, through her mother Tammy Johnson Harper, appeals the decision of the Circuit Court of Kanawha County to grant a directed verdict in favor of Appellee Hills Department Stores, Inc. in a negligent infliction of emotional distress claim arising from a shoplifting incident. Upon our review of the record in this case, we find no error and accordingly affirm the lower court's decision.

On October 3, 1987, Mrs. Harper was shopping with her four-year-old daughter at the Appellee's Patrick Street Plaza store located in Charleston, West Virginia. After selecting some draperies, Mrs. Harper proceeded to the check-out area and paid for the draperies by check in the approximate amount of $16.00. As she exited the store, Mrs. Harper was approached by two individuals upon suspicion of shoplifting. Mrs. Harper was required to accompany Mr. Runer, the store manager, and Mr. Hickman of loss prevention, to a small room inside the store for questioning. Appellant was with her mother throughout the entire period of her mother's detainment.

While in the store office with Messrs. Runer and Hickman, Mrs. Harper was informed that she had removed a curtain valance from the store without paying for the item. The valance was valued at approximately $6.00. Mrs. Harper was asked to sign a statement indicating that she had stolen the valance, but she refused to do so. She was ultimately taken by a Charleston police officer to the police station, where she was fingerprinted, photographed, and charged with shoplifting.

Appellant became upset as soon as Appellee's employees approached her mother outside the store. According to Mrs. Harper, Appellant was crying and "broke out into a sweat and was practically crawling up my shoulder. . . ." During the forty-minute period when Mrs. Harper and Appellant were detained in the store office, Appellant continued to cry and scream. Mrs. Harper asked several times, but was denied, the opportunity to call her husband so that he could remove Appellant from the situation. Mrs. Harper testified that when the police officer entered the room, Appellant cried harder and became even more upset. As a result of this incident, Appellant is alleged to have had continuing panic attacks and other emotional difficulties. Appellant received counseling for a long period of time allegedly as a result of this incident.[1]

Appellant, through her mother, filed a complaint in the circuit court on March 6, 1990, against Appellee, seeking damages for false imprisonment and negligent infliction of emotional distress to Appellant. Due to various stays imposed in connection with bankruptcy proceedings involving Appellee, the matter did not proceed to trial until April 24, 1995. At the close of Appellant's case, Appellee moved for a directed verdict on all counts. By agreement of counsel, the false imprisonment count was dismissed with prejudice.[2] With regard to the remaining counts pertaining to intentional and/or reckless and negligent infliction of emotional distress, the circuit court took the motion to dismiss those counts under advisement. By order dated May 15, 1995, the circuit court dismissed the counts concerning emotional distress, finding that the conduct of Appellee's employees did not rise to the requisite level and degree to permit recovery under applicable case law. The lower court's order granting a directed verdict on the emotional distress counts is the subject of this appeal.

I.  STANDARD OF REVIEW

■ This Court recently set forth the applicable standard of review for directed verdicts:

---

1. The record indicates, however, that Appellant was involved in a traumatic car accident a few months after this incident and the suggestion is made by Appellee that this incident may have contributed to her emotional problems.

2. Appellant's counsel conceded that no evidence had been introduced to substantiate a claim of false imprisonment.

The appellate standard of review for the granting of a motion for a directed verdict pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a directed verdict when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed.

Syl. Pt. 3, *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996). Accordingly, our review of this matter is de novo.

## II. EMOTIONAL DISTRESS

██ This Court first recognized the tort of outrage in syllabus point six of *Harless v. First National Bank*, 169 W.Va. 673, 289 S.E.2d 692 (1982): "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." That ruling was fashioned from Section 46 of the Restatement of Torts which includes the following comment:

> d. *Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal ... *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*[3]

Restatement (Second) of Torts § 46 cmt. d (1965) (footnote added and emphasis supplied).

Noting that "the hallmark of this tort ... is intentional and outrageous conduct," *Harless* cited with approval the decision of *Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145 (1974), which defined the tort of outrageous. conduct as:

> "[A] cause of action will lie for emotional distress, unaccompanied by physical injury, provided four elements are shown: One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe."

*Harless*, 169 W.Va. at 694–95, 289 S.E.2d at 704 (citing *Womack*, 210 S.E.2d at 148).

██ As with all motions for directed verdict, we review the evidence in the light most favorable to the nonmovant party to determine whether reasonable minds could differ as to the importance and sufficiency of the evidence. *Brannon*, 197 W.Va. at 100, 475 S.E.2d at 100. "The question for us 'is not "whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict...."'" *Id.* (quoting *Neely v. Mangum*, 183 W.Va. 393, 395, 396 S.E.2d 160, 162 (1990) quoting *Littlejohn v. ACF Indus. Corp.*, 556 F.Supp. 70, 73 (S.D.W.Va.1982)).

The evidence presented in this case was that Appellant, a four-year-old child, became emotionally agitated when Appellee's employees detained her mother and required Mrs. Harper and Appellant to proceed to the in-store location for questioning. It is undis-

---

**3.** Comment d includes the additional statements that "[t]he liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities[ ]" and "[t]here is no occasion for the law to intervene in every case where some one's feelings are hurt." Restatement, *supra*, § cmt. d.

puted that Appellant was not subject to any physical contact by Appellee's employees. It is further undisputed that the only words even indirectly aimed at Appellant during the in-store detention were to the effect of "make her [Appellant] be quiet." Thus, the conduct at issue is that of Appellee's employees with regard to Mrs. Harper.

■ We previously addressed whether a child could recover damages for severe emotional distress in the absence of a physical injury where the child witnessed a third person verbally abusing and physically assaulting his mother. In syllabus point two of *Courtney v. Courtney,* 186 W.Va. 597, 413 S.E.2d 418 (1991), *rev'd on other grounds,* 190 W.Va. 126, 437 S.E.2d 436 (1993), we stated that: "A third person may recover emotional distress damages if the direct victim of the defendant's outrageous conduct is a member of the third person's immediate family, and the third person witnessed the outrageous conduct." We explained the prerequisites for such recovery as:

(1) the defendant's conduct was 'extreme and outrageous'; (2) such conduct was directed at a third party; (3) the plaintiff is a member of the third person's immediate family; (4) the plaintiff was physically present when the extreme and outrageous conduct took place; (5) the plaintiff suffered severe emotional distress as a result of the conduct; and (6) if the emotional distress results in bodily injury, any person who was present at the time of the outrageous conduct may recover.

186 W.Va. at 601, 413 S.E.2d at 422.

■ Against these principles, we review the facts from the record provided.[4] When Mrs. Harper was first approached by Appellee's employees as she exited the store, she was told by Messrs. Hickman and Runer that she "needed to go back inside with them, that there was something in [her] bag that wasn't supposed to be [there]." One of the men reportedly grabbed her right arm and the other individual grabbed her purse. Mrs. Harper testified that the two individuals were "very rude" to her when she asked for

an explanation and they "told me that—not to worry about it, that I stole something, and I would have my day in court." When they reached the in-store room, Mrs. Harper "was told that [she] needed to sit down, shut up and to keep [her] kid quiet." When Mrs. Harper requested that she be permitted to telephone her husband for the purpose of having him pick up her daughter, she was allegedly told: "No. It's not our problem. You stole this, shut up, sit down." In addition, Appellee's employees apparently accused Mrs. Harper of lying about her husband's name.[5]

We explained in *Hines v. Hills Department Stores, Inc.,* 193 W.Va. 91, 454 S.E.2d 385 (1994):

Our review of the case law discussing the tort of outrageous conduct illustrates that it is a difficult fact pattern to prove. A certain level of outrageousness is required, ... but it is almost impossible for this Court to define what will make a case of outrageous conduct. Instead we will define what it is not on a case-by-case basis.

*Id.* at 96, 454 S.E.2d at 390. In *Hines,* we ruled that a jury verdict for intentional infliction of emotional distress was improper where the basis for the claim was the decision of Hills to prosecute, rather than just discharge, employees who had purchased tricycles that were improperly scanning as $3.00 when the items were ticketed at a price of $19.97. Our decision in *Hines* referenced comment j. to Section 46 of the Restatement that "[t]he law intervenes only where the distress is so severe that no reasonable [person] could be expected to endure it." 193 W.Va. at 95, 454 S.E.2d at 389.

■ The evidence presented in this case simply does not rise to the level necessary to demonstrate the tort of outrage. While Appellee admits implicitly in its brief that its employees could have treated Mrs. Harper in a kinder fashion, it correctly posits that rudeness is not in itself sufficient to meet the elements of outrage. As we noted in *Kanawha Valley Power Co. v. Justice,* 181 W.Va.

---

4. The only portion of the trial transcript that has been included in the record of this matter is the testimony of Mrs. Harper.

5. When she referred to her husband as Bobby, they reportedly indicated that Mr. Harper's name was stated differently on the check she gave for her purchased items. The check identifies Mr. Harper as "J. Robert Harper."

509, 383 S.E.2d 313 (1989), "liability may be imposed for outrageous conduct only where the distress that results is more than the 'transient' and 'trivial' distress that necessarily accompanies life among other people." *Id.* at 513, 383 S.E.2d at 317 (quoting Restatement, *supra* § 46 cmt. j). Clearly, this was an unpleasant experience for Appellant. We cannot conclude, however, that the conduct of Appellee's two employees towards Mrs. Harper meets the minimum threshold for establishing severe emotional distress.

In explanation of why "we have demanded such strict proof of unprecedented and extreme misconduct" in these cases, we noted that " '[e]specially where no physical injury accompanies the wrong, the tort of outrage is a slippery beast, which can easily get out of hand without firm judicial oversight.' " *Tanner v. Rite Aid of West Virginia, Inc.*, 194 W.Va. 643, 651, 461 S.E.2d 149, 157 (1995) (quoting *Keyes v. Keyes,* 182 W.Va. 802, 805, 392 S.E.2d 693, 696 (1990)). The circuit court properly fulfilled its role of "determin[ing] whether on the evidence severe emotional distress can be found." *Tanner,* 194 W.Va. at 651, 461 S.E.2d at 157 n. 11 (quoting Restatement, *supra,* § 46 cmt. j).

Because we find no evidence of conduct that meets the requirements of the tort of outrage, the decision of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.