# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2018 Term

_____

No. 17-0591

_____

**FILED**
**May 9, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**DENNIS R. RICHARDS, JR.,**
**Plaintiff Below, Petitioner**

v.

**ANDREW WALKER, individually and**
**in his capacity as Chief of Police of the**
**Town of Grantsville Police Department;**
**and TOWN OF GRANTSVILLE,**
**Defendants Below, Respondents**

_____

**Appeal from the Circuit Court of Calhoun County**
**The Honorable Anita Harold Ashley, Judge**
**Civil Action No. 16-C-32**

_____

**AFFIRMED**

_____

**Submitted: April 24, 2018**
**Filed: May 9, 2018**

**James D. McQueen, Jr., Esq.**
**McQueen Davis, PLLC**
**Huntington, West Virginia**
**Counsel for the Petitioner**

**Timothy L. Mayo, Esq.**
**Jeffrey Wakefield, Esq.**
**Flaherty Sensabaugh Bonasso PLLC**
**Charleston, West Virginia**
**Counsel for the Respondents**

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

"A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitations for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitations began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitations is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact." Syl. pt. 5, *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009).

**Justice Ketchum**:

Dennis R. Richards, Jr., petitioner and plaintiff below, appeals from the May 31, 2017, order of the Circuit Court of Calhoun County which dismissed the complaint against the respondents and defendants below, Police Chief Andrew Walker and the Town of Grantsville.

Richards's driving privileges were revoked by the West Virginia Division of Motor Vehicles for driving under the influence of alcohol. After the Office of Administrative Hearings reversed the revocation, Richards filed the complaint in the circuit court and alleged malicious prosecution, outrageous conduct, intentional infliction of emotional distress and defamation against Chief Walker. Richards alleged the negligent employment of Chief Walker against the Town of Grantsville.

The circuit court granted Chief Walker and the Town of Grantsville's joint motion to dismiss on the ground that all the claims alleged were barred by the applicable statute of limitations. Upon review, this Court concludes that the circuit court reached the correct result. We, therefore, affirm the May 31, 2017, order.

1

## I. Factual Background

On December 9, 2011, Richards was pulled over by Chief Walker for driving with a defective tail light or plate light. Chief Walker asked Richards if he had been drinking. Richards replied that he had consumed three or four beers. Chief Walker administered several field sobriety tests, such as standing on one foot, counting, and walking heel-to-toe. Able to complete only a portion of the tests, Richards asserted that he suffers from a number of health problems, such as chronic leg, back, and respiratory pain and weakness.

Soon after, a backup officer arrived on the scene with preliminary breath test equipment. According to Chief Walker, the test revealed a breath alcohol content of 0.145 percent. Richards was placed under arrest and taken to the police station. Although Richards took an intoximeter test at the station, the machine did not produce a valid result. Chief Walker filed a criminal complaint in the Calhoun County magistrate court, and probable cause was found to charge Richards with first offense driving under the influence of alcohol.[1]

---

[1] Richards asserts that Chief Walker falsified information in the criminal complaint filed in magistrate court. First, Chief Walker stated in the complaint that he performed a horizontal gaze nystagmus test after asking Richards to remove his glasses. Richards insists that no HGN test was performed and that at no time was he wearing glasses.

Second, contrary to Chief Walker's statement, Richards denies that he received *Miranda* warnings. Third, Chief Walker stated in the complaint that Richards had not blown hard enough into the intoximeter to produce a result. Richards states, however, that Officer Ronald Bandy told Chief Walker that Richards was, in fact, cooperating, but that the intoximeter was not producing a result.

Richards's DUI case was ultimately resolved on January 19, 2012, when he entered a no-contest plea to reckless driving.

Later, Chief Walker submitted a DUI Information Sheet to the West Virginia Division of Motor Vehicles. The Information Sheet was postmarked May 15, 2012, and received by the Division of Motor Vehicles on May 17, 2012. Chief Walker alleged in the Information Sheet that Richards drove a vehicle on December 9, 2011, while under the influence of alcohol.[2]

The Division of Motor Vehicles issued an order dated June 13, 2012, revoking Richards's driving privileges. The order stated that the revocation would be effective as of July 18, 2012. Later, Richards received an amended order dated April 23, 2013, which also referred to July 18, 2012, as the effective date of the revocation. Richards contested the revocation, and an administrative hearing was scheduled for October 24, 2012.[3] Chief Walker was under subpoena but did not appear. Although Richards moved to dismiss the revocation, the hearing was rescheduled to July 19, 2013. Chief Walker, again under

---

[2] Richards asserts that Chief Walker falsified information in the DUI Information Sheet submitted to the Division of Motor Vehicles. The Information Sheet and the criminal complaint were substantially similar.

[3] The administrative proceeding was styled *Dennis Richards, Petitioner, v. Pat S. Reed, Comm'r, W.Va. Div. of Motor Vehicles, Respondent*, OAH Case No. 362315A (2012).

3

subpoena, did not appear. Richards's motion to dismiss was denied. Thereafter, the Division of Motor Vehicles filed a subpoena enforcement action. That action was dismissed upon Chief Walker's statement that he had not received the two previously issued subpoenas and upon his promise to appear at future hearings. The hearing was then scheduled for May 20, 2014. Again, Chief Walker did not appear.

On March 18, 2016, the hearing examiner of the Office of Administrative Hearings concluded that the revocation of Richards's driving privileges should be reversed. The hearing examiner found that the Information Sheet Chief Walker sent to the Division in May 2012 was not submitted in a timely manner. *See W.Va. Code*, 17C-5A-1(b) [2008] (Law enforcement required to submit DUI investigation report regarding offender to DMV within forty-eight hours). Moreover, the hearing examiner found that Chief Walker failed to obey the subpoenas without justification. The hearing examiner's determinations were approved by the Chief Hearing Examiner on March 21, 2016. As a result, the revocation of Richards's driving privileges was overturned on the basis that the evidence was insufficient to prove that he drove a motor vehicle on December 9, 2011, while under the influence of alcohol.

## II. Procedural Background

On November 15, 2016, Richards filed a complaint in the Circuit Court of Calhoun County against Chief Walker and the Town of Grantsville.[4]  Alleging that Chief Walker falsified information in both the criminal complaint and the DUI Information Sheet, Richards asserted claims against Chief Walker for malicious prosecution, outrageous conduct, intentional infliction of emotional distress and defamation.  In addition, Richards asserted a claim against the Town of Grantsville alleging the negligent employment of Chief Walker.[5]  The relief Richards sought included punitive damages and attorney's fees.

Chief Walker and the Town of Grantsville filed a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.  They alleged that all of Richards's claims were barred by the statute of limitations.  The circuit court agreed and granted the motion by order entered on May 31, 2017.  Central to the circuit court's determination was *W.Va. Code*, 55-2-12 [1959], which states:

---

[4] The action was styled *Dennis R. Richards, Jr., Plaintiff, v. Andrew Walker, individually and in his capacity as Chief of Police of the Town of Grantsville Police Department, and Town of Grantsville, Defendants*, Civil Action No. 16-C-32 (Calhoun Cnty. 2016).

[5] Richard's malicious prosecution claim, for example, alleged that Chief Walker "intentionally, maliciously and without reasonable cause" submitted a false statement to the DMV, and that, nevertheless, the administrative proceeding was resolved in Richards's favor when Chief Walker "intentionally failed to appear at three hearings."

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

First, the circuit court noted that under *W.Va. Code*, 55-2-12(c) [1959], the statute of limitation for both malicious prosecution and defamation is one year. *See Snodgrass v. Sisson's Mobile Home Sales, Inc*., 161 W.Va. 588, 594, 244 S.E.2d 321, 325 (1978) (Malicious prosecution and defamation take a one-year statute of limitations under *W.Va. Code*, 55-2-12(c).). The circuit court determined that Richards's malicious prosecution claim began to run on January 19, 2012, when he entered the no-contest plea to reckless driving and that his defamation claim began to run in June 2012 when he received the initial revocation order, dated June 13, 2012, from the Division of Motor Vehicles. Because Richards's complaint was not filed until November 2016, the circuit court concluded that both the malicious prosecution and defamation claims were barred by the statute of limitations.

Second, the circuit court correctly treated Richards's allegations of outrageous conduct and intentional infliction of emotional distress as a single claim[6] and noted that under *W.Va. Code*, 55-2-12 [1959], the applicable statute of limitations is two years.[7] The circuit court determined that this claim, like the defamation claim, began to run in June 2012 when Richards received the revocation order from the Division of Motor Vehicles. Because the complaint was not filed until November 2016, the circuit court concluded that the intentional infliction of emotional distress claim was barred by the statute of limitations.

Finally, the circuit court determined that Richards's negligent employment claim was barred by the statute of limitations. The circuit court stated that the analysis it had applied

---

[6] *See Beasley v. Mayflower Vehicle Sys., Inc.*, No. 13-0978, 2014 WL 2681689, (W.Va. June 13, 2014) (Memorandum Decision) (Intentional infliction of emotional distress is also known as the tort of outrage.); *Travis v. Alcon Labs., Inc.*, 202 W.Va. 369, 374, 504 S.E.2d 419, 424 (1998) ("Intentional or reckless infliction of emotional distress, also called the 'tort of outrage,' is recognized in West Virginia as a separate cause of action."); *Whitehair v. Highland Memory Gardens, Inc.*, 174 W.Va. 458, 460, 327 S.E.2d 438, 440 (1985) (The intentional infliction of emotional distress is sometimes known as the tort of outrage.). *See also*, syl. pt. 6, in part, *Harless v. First Nat'l Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982) ("One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress[.]").

[7] *See Evans v. United Bank, Inc.*, 235 W.Va. 619, 627 n. 8, 775 S.E.2d 500, 508 n. 8 (2015) (Under *W.Va. Code*, 55-2-12, a two-year statute of limitations applies to a claim of intentional or negligent infliction of emotional distress.). Moreover, syllabus point 5 of *Courtney v. Courtney*, 190 W.Va. 126, 437 S.E.2d 436 (1993), states in part: "A claim for severe emotional distress arising out of a defendant's tortious conduct is a personal injury claim and is governed by a two-year statute of limitations under W.Va. Code, 55-2-12(b) (1959)." *Accord*, syl. pt. 2, *McCammon v. Oldaker*, 205 W.Va. 24, 516 S.E.2d 38 (1999); syl., *Bramer v. Dotson*, 190 W.Va. 200, 437 S.E.2d 773 (1993).

to each of Richards's claims against Chief Walker would therefore apply to bar the claim

against the Town of Grantsville.[8]

Richards appeals to this Court from the dismissal of the complaint upon the circuit

court's determination that all of his claims are barred by the statute of limitations.[9]

_____

[8] In West Virginia, negligence claims are governed by a two year statute of limitation under *W.Va. Code*, 55-2-12 [1959]. *See*, *Trafalgar House Constr., Inc. v. ZMM, Inc.*, 211 W.Va. 578, 583, 567 S.E.2d 294, 299 (2002). While little authority can be found specific to negligent employment, we note *Retherford v. AT & T Commc'ns*, 844 P.2d 949, 977 (Utah 1992), wherein the Supreme Court of Utah stated that the statute of limitations for negligent employment does not begin to run "until all elements of the employee's tort are present." The *Retherford* opinion suggests, however, that, where the employee's malfeasance was sufficiently apparent that the employer should have taken steps to correct it, the employer's breach of duty could be evident even before the victim's cause of action has fully accrued. *Id*.

As to respondeat superior, this Court observed in *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009):

> Determining the applicable statute of limitation when a plaintiff alleges that an employer is vicariously responsible for the acts of an employee is more difficult. Because the employer may only be held liable to the extent that the employee can be held liable, and only for acts committed by the employee in the course of his or her employment, the statute of limitation applicable to an employer is determined by the act of the employee.

225 W.Va. at 62, 689 S.E.2d at 274.

[9] Richards does not appeal the dismissal of his defamation claim.

### III. Standards of Review

Rule 12(b)(6) authorizes a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. If the motion is granted, review by this Court is *de novo*. Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). Consequently, in reviewing a dismissal, although this Court will construe the complaint in the light most favorable to the plaintiff, we are not bound "to accept any party's posited statutory interpretations or proffered conclusions of law." *State ex rel. Perdue v. Nationwide Life Ins. Co.*, 236 W.Va. 1, 6, 777 S.E.2d 11, 16 (2015).

### IV. Discussion

Richards contends that each of the claims set forth in the complaint arose from the false Information Sheet Chief Walker filed with the Division of Motor Vehicles and Chief Walker's failure to appear at the scheduled hearings, rather than the prior criminal case in which Richards entered the no-contest plea to reckless driving. Thus, according to Richards, since his driving privileges remained in jeopardy until the hearing examiner's order of March 18, 2016, the filing of the complaint on November 15, 2016, was well within the one and two-year statute of limitations. In support, Richards cites *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W.Va. 338, 801 S.E.2d 216, 224 (2017), for the principle that a claim is not ripe if it rests upon events "that may not occur as anticipated, or indeed may not occur at all." (citation omitted). However, for the following reasons, we find

9

that Richards's alleged claims were not contingent on the outcome of the administrative proceedings on March 18, 2016.

### A. The Malicious Prosecution Claim

Relying on the March 18, 2016, date regarding the malicious prosecution claim, Richards cites syllabus point 1 of *Lyons v. Davy-Pocahontas Coal Co.*, 75 W.Va. 739, 84 S.E. 744 (1915), in which this Court stated: "To maintain an action for malicious prosecution it is essential to prove (1) that the prosecution was malicious, (2) that it was without reasonable or probable cause, and (3) *that it terminated favorably to plaintiff.*" (Emphasis added). *Accord*, syl. pt. 1, *Preiser v. MacQueen*, 177 W.Va. 273, 352 S.E.2d 22 (1985).

The circumstances in the current matter, however, are unique. Chief Walker was mandated by statute to file the Information Sheet with the Division of Motor Vehicles. Specifically, *W.Va. Code*, 17C-5A-1(b) [2008], provides that a law enforcement officer in a DUI case "shall report" the conclusion of his or her investigation to the Division by written statement. The statute further provides: "The statement shall contain upon its face a warning to the officer signing that to willfully sign a statement containing false information

concerning any matter or thing, material or not material, is false swearing and is a misdemeanor."[10]

Moreover, although Chief Walker's criminal complaint and Information Sheet are not identical, the basic information is the same in both documents, which warranted further proceedings in magistrate court and before the Division of Motor Vehicles respectively. Both the criminal complaint and the Information Sheet reported that Richards admitted drinking an alcoholic beverage; that he failed the field sobriety tests, the HGN test, and the preliminary breath test; and that he received *Miranda* warnings. Richards's complaint filed in the circuit court sets forth a comparison of the criminal complaint and the Information Sheet and incorporates the comparison in each claim against Chief Walker, including the malicious prosecution claim. The malicious prosecution claim includes the following allegation: "Chief Walker had no probable cause to submit a false criminal complaint, criminal citation, and sworn statement to the WV DMV or the Magistrate Court of Calhoun County, West Virginia, regarding Mr. Richards."

---

[10] Although the hearing examiner found that the Information Sheet was not submitted by Chief Walker in a timely manner, we find no basis in the record to conclude that Richards was prejudiced by the delay. *See*, syl. pt. 1, *In re Burks*, 206 W.Va. 429, 525 S.E.2d 310 (1999) (Absent actual prejudice to the driver, a law enforcement officer's failure to strictly comply with the DUI reporting time requirements is not a bar to the DMV's administrative action.). *Accord*, syl. pt. 3, *Carpenter v. Cicchirillo*, 222 W.Va. 66, 662 S.E.2d 508 (2008).

11

The criminal case terminated on January 19, 2012, with Richards's no-contest plea to reckless driving. Although the revocation proceeding was a separate matter, the Information Sheet filed by Chief Walker was derivative of Chief Walker's criminal complaint. Richards was represented by counsel in magistrate court and before the Division and should have been aware of his malicious prosecution claim regarding the revocation proceeding at least by June 2012 when he received the order revoking his driving privileges. In any event, whether the malicious prosecution claim accrued on January 19, 2012, or in June 2012, the claim was not filed in circuit court until November 15, 2016, and is barred by the one-year statute of limitations under *W.Va. Code*, 55-2-12 [1959].

## B. The Intentional Infliction of Emotional Distress and Negligent Employment Claims

Although Chief Walker's failure to appear at three revocation hearings is a purported component of the malicious prosecution claim, Richards primarily relies on the failure to appear in conjunction with his claim of intentional infliction of emotional distress.[11]

---

[11] In syllabus point 3 of *Travis v. Alcon Labs., Inc*., 202 W.Va. 369, 504 S.E.2d 419 (1998), this Court held:

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused

12

According to Richards, Chief Walker's failure to appear when subpoenaed, and failure to correct the false Information Sheet, constituted a "continuing tort" and tolled the applicable two year statute of limitations until the Division's March 18, 2016, order which rescinded the revocation of Richards's driving privileges. Thus, Richards contends that his claim for intentional infliction of emotional distress, filed on November 15, 2016, was not barred by the statute of limitations.

This Court stated in syllabus point 5 of *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009):

> A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitations for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitations began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc*., 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which

---

the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Accord*, syl. pt. 5, *Herbert J. Thomas Mem'l Hosp.Ass'n v. Nutter*, 238 W.Va. 375, 795 S.E.2d 530 (2016).

13

prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitations is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.[12]

*Accord*, syl. pt. 4, *Evans v. United Bank, Inc.*, 235 W.Va. 619, 775 S.E.2d 500 (2015).

Applying the *Dunn v. Rockwell* analysis, the circuit court correctly determined that the statute of limitations for a claim of intentional infliction of emotional distress is two years. *See*, n. 7, *supra*. Moreover, in response to the motion to dismiss, Richards made clear that he "does not contend the discovery rule applies or that Defendants fraudulently concealed facts." Thus, under the *Dunn* analysis, that leaves the question of when the claim accrued, which the circuit court determined was in June 2012 when Richards received the initial revocation order. The last factor under the *Dunn* analysis also remains, *i.e.*, whether Chief Walker committed a "continuing tort" which tolled the statute of limitations until March 18, 2016.

---

[12] Syllabus point 4 of *Gaither v. City Hosp., Inc.*, cited in *Dunn*, holds that, under the discovery rule, the statute of limitations regarding tort actions generally begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know "(1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury."

Syllabus point 11 of *Graham v. Beverage*, 211 W.Va. 466, 566 S.E.2d 603 (2002), holds: "Where a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." *Accord*, syl. pt. 4, *Taylor v. Culloden Public Service District*, 214 W.Va. 639, 591 S.E.2d 197 (2003).

Chief Walker and the Town of Grantsville contend that the last injury to Richards occurred when Chief Walker filed the alleged false Information Sheet with the Division, or no later than June 2012 when Richards received the initial revocation order. Chief Walker and the Town of Grantsville further contend that Chief Walker's absence from the administrative hearings should be characterized as an element of damages, rather than a continuing tort. In support, they cite *Roberts v. W.Va. American Water Co.*, 221 W.Va. 373, 378, 655 S.E.2d 119, 124 (2007), for the principle that a continuing tort occurs when all elements of the tort continue, "not simply the damage element." (citation omitted). In the alternative, they assert that, even if a continuing tort occurred, Chief Walker's last transgression took place on May 20, 2014, the date of the last scheduled hearing before the Division. Under either theory, the claim would be barred by the two year statute of limitations since the complaint was not filed until November 15, 2016.

This Court is of the opinion that the circuit court correctly concluded, as a matter of law, that the running of Richards's claim was not tolled by the continuing tort doctrine and that the claim should be dismissed. The circuit court stated: "[T]he claim arose out of a single incident, and without any further wrongful acts by defendant Walker, the continuing consequential damages of that single act are insufficient to constitute a continuous tort and thereby toll the statute of limitations."

Chief Walker's failure to appear at the hearings was subject to the hearing examiner's authority to control the proceedings. For example, as of March 23, 2016, a new series of procedural rules became effective regarding appeals to the Office of Administrative Hearings from orders and decisions of the Commissioner of the Division of Motor Vehicles. *See* § 105-1-1 [2016], *et seq*., of the West Virginia Code of State Rules.

Richards extends Chief Walker's failure to appear at the administrative hearings into his claim regarding the Information Sheet. From there, he suggests that his cause of action for intentional infliction of emotional distress is a continuing tort, thereby tolling the statute of limitations. In *Travis v. Alcon Labs., Inc.*, 202 W.Va. 369, 378, 504 S.E.2d 419, 428 (1998), this Court stated that whether conduct may reasonably be considered outrageous is a legal question. While little can be discerned from the record concerning Chief Walker's non-appearances, Richards's motions to dismiss were denied by the hearing examiner on two

occasions.  Finally, we note that the Division's June 13, 2012, revocation order, and the amended order, indicated that the revocation of Richards's driving privileges would be stayed until the resolution of the administrative proceeding.  *See*, *W.Va. Code*, 17C-5A-2(a) [2012] (providing for a stay of the period of revocation where an administrative hearing is to be conducted).

This Court concludes, therefore, that Chief Walker's failure to appear at the administrative hearings did not constitute a continuing tort in relation to Richards's claim for intentional infliction of emotional distress.  The circuit court correctly determined that the claim began to run in June 2012 when Richards received the revocation order.  The claim was properly dismissed as a matter of law pursuant to Rule 12(b)(6).

Richards also asserts the continuing tort doctrine regarding the negligent employment claim against the Town of Grantsville.  According to Richards, the Town of Grantsville failed in its duty to discipline Chief Walker for filing a false Information Sheet and disobeying the administrative subpoenas.[13]  Consequently, Richards argues that the statute

---

[13] *See*, *McCormick v. W.Va. Dep't Pub. Safety*, 202 W.Va. 189, 193, 503 S.E.2d 502, 506 (1998) (In a negligent hiring or retention case, the issue is whether the employer should have reasonably foreseen the risk caused by hiring or retaining an unfit person); *Woods v. Town of Danville*, 712 F.Supp.2d 502, 515 (S.D. W.Va. 2010) (In West Virginia, negligent supervision claims must show a failure to properly supervise which proximately caused injury to the plaintiff.).

of limitations was tolled until March 18, 2016, when the Division rescinded the revocation of his driving privileges.

Richards's argument regarding the negligent employment claim is without merit. Richards reasonably should have known of this claim in June 2012 when he received the initial revocation letter, or no later than May 20, 2014, the date of the last scheduled administrative hearing at which Chief Walker did not attend. The complaint was filed on November 15, 2016, more than two years later. Therefore, the claim is barred by the statute of limitations.

## V. Conclusion

The claims set forth in the complaint are barred by the applicable statute of limitations. This Court, therefore, affirms the May 31, 2017, order of the Circuit Court of Calhoun County which granted the motion to dismiss filed by Chief Walker and the Town of Grantsville.

Affirmed.